### HARRY FRIGON *v.* ENFIELD SAVINGS AND LOAN ASSOCIATION
### (12266)

PETERS, C. J., HEALEY, PARSKEY, SHEA and MENT, Js.

Argued November 13, 1984—decision released January 22, 1985

*Bruce D. Tyler,* for the appellant (plaintiff).

*Arnold Sbarge,* with whom, on the brief, was *David M. Roth,* for the appellee (defendant).

PETERS, C. J. The principal issue in this case is whether the holder of a passbook for a joint savings account has established that funds were improperly transferred from the account. The plaintiff, Harry Frigon, brought an action to recover damages from the defendant, Enfield Federal Savings and Loan Association, because the defendant allowed funds on deposit in a joint savings account to be withdrawn without surrender of the passbook or notice to the plaintiff. The trial court, having found that withdrawal of the funds was proper, rendered judgment for the defendant and the plaintiff has appealed.

Many of the underlying facts are undisputed. The plaintiff and his brother Edward established a joint savings account with survivorship by adding the plaintiff's name to Edward's existing account with the defendant bank.[1] The plaintiff received possession of the pass-

---

[1] The plaintiff added his signature to the defendant bank's signature card previously executed by Edward, and the defendant bank added his name

book for this joint account. All the funds deposited into the account came from Edward, and all the withdrawals were for his benefit. Because the account was denominated a survivorship account, Edward retained during his lifetime the unlimited authority to withdraw any or all of the funds it contained. The interest of the plaintiff was limited to a right to whatever funds remained in the account upon Edward's death. Before Edward's death, all of the funds in the account were transferred into a new account at the defendant bank. That transfer was accomplished through the presentation of a withdrawal request and a power of attorney executed by Edward to Attorney Walter Dudek. Several months after Edward's death, the plaintiff tendered the passbook to the bank with a request for withdrawal of the balance noted therein. That request was dishonored and this litigation ensued.

The parties were at issue, during the trial, about the circumstances surrounding the execution of the power of attorney and the reasonableness of the defendant bank's reliance upon that power of attorney to permit withdrawal of funds from the joint account without the presentation of the related passbook. The trial court found for the defendant on all the issues of the complaint. On this appeal, the plaintiff claims error in the

to the passbook previously issued to Edward. The signature card bore the statement that the defendant bank had the authority "to act pursuant to any one or more of the joint tenants' signatures, shown below, in any manner in connection with this account and to pay, without any liability for such payment, to any one or the survivor or survivors at any time." The passbook recited that "[t]his book must accompany all deposits and withdrawals," but authorized remittances "through the mail by check, money order or registered letter" upon statement of the "account number." The signature card does not refer to the passbook.

The payment of funds upon a request for withdrawal without the presentation of a passbook is proscribed neither by the federal banking regulations governing federal savings and loan associations nor by the applicable state statute. Federal Home Loan Bank Board, Annotated Manual of Statutes and Regulations, par. 771.54; General Statutes § 36-3.

trial court's determinations that: (1) the power of attorney was valid; (2) the defendant bank was not negligent; (3) the power of attorney carried a valid order for the withdrawal of funds from the joint account; and (4) the passbook was not required in connection with the withdrawal. We find no error.

The defendant's attack on the validity of the power of attorney raises the question of Edward's capacity on February 13, 1982, to execute a power of attorney.[2] On that day, Attorney Dudek conferred about the power of attorney with Edward at the home of Mrs. Lyons, where Edward was then living. Although Edward was then seriously ill because of cirrhosis of the liver, Edward and Dudek discussed Edward's wish to terminate the joint bank account and to have the funds transferred into a sole account. Dudek testified that Edward, despite his illness, was clear about what he wanted. William Waldman, Edward's treating physician, testified, to the contrary, that Edward's condition, including a prehepatic coma, was one of continual confusion, but, he acknowledged, the degree of Edward's confusion was variable. Waldman was unable to give a specific opinion about Edward's mental capacity on the date of the execution of the power of attorney or on the days immediately preceding or subsequent thereto. Edward had, however, been repeatedly hospitalized for his deteriorating health. One month after the execution of the power of attorney, a conservator was appointed for the person and estate of Edward and, after another month, Edward died.

The question of capacity, like other questions concerning the creation of an agency relationship, is a question of fact. *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 120, 133, 464 A.2d 6 (1983); *Botticello* v.

---

[2] The plaintiff does not claim that the power of attorney resulted from the exercise of undue influence. There is likewise no claim that the transferred funds were used for the benefit of anyone other than Edward.

*Stefanovicz,* 177 Conn. 22, 26, 411 A.2d 16 (1979). The trial court, as the trier of the facts, had the opportunity to hear the witnesses and to determine their credibility. Its findings are reversible by this court only if they are clearly erroneous. Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). In this case, since the trial court's determination had sufficient evidentiary support in credible testimony of Dudek and Waldman, the plaintiff's claim of error is unpersuasive.

The plaintiff's second claim, that the defendant bank was negligent, is seriously undermined by our conclusion that the power of attorney was valid. The plaintiff virtually concedes that he would have had no claim for negligence had the defendant, acting in accordance with the authority contained in the signature card, paid to Edward any or all of the funds held in the joint account. A fortiori, it was not negligent to pay funds to a duly appointed agent acting on Edward's behalf. The plaintiff's residual argument is that it was negligent for the defendant to pay funds out of the joint account without the tender of the passbook and without notification of the plaintiff, when withdrawal was sought by someone other than Edward personally. The trial court construed the agreement of the parties to the contrary. We agree with the trial court's construction.

The only signed agreement between the parties was the signature card, which unequivocally directed the defendant bank to honor withdrawal requests by either of the joint signatories to the account. The signature card contained no reference to presentation of the passbook as a condition of a proper withdrawal. Neither the signature card nor the passbook stated that withdrawals without the presentation of the passbook required notification of other signatories of the joint account. It was reasonable for the trial court to con-

strue this documentation to make the signature card the primary source of the contractual agreement between the parties. A signature card is essential to the creation of a bank account; a passbook ordinarily is not. A passbook serves a useful function in providing assurance of the propriety of a withdrawal if the bank is in doubt about the auspices of a withdrawal order. When the bank has been presented and has honored a withdrawal order which is in fact wholly authorized, the finder of the facts may conclude that presentation of the passbook is not essential. See, e.g., *Haseman* v. *Union Bank of Mena,* 262 Ark. 803, 807, 562 S.W.2d 45 (1978) and, after retrial, 268 Ark. 318, 321, 597 S.W.2d 67 (1980); *Paskas* v. *Illini Federal Savings & Loan Assn.,* 109 Ill. App. 3d 24, 28–30, 440 N.E.2d 194 (1982); *Kuehl* v. *Terre Haute First National Bank,* 436 N.E.2d 1160, 1162 (Ind. App. 1982); contra *Keokuk Savings Bank & Trust Co.* v. *Desvaux,* 259 Iowa 387, 143 N.W.2d 296 (1966).

Since the agreement between the parties imposed no duty of care upon the defendant bank beyond that which it exercised, and since the plaintiff introduced no other evidence to establish any further duty of care, the trial court properly found that the plaintiff's claim of negligence was not proven. The fact that a bank is indebted to its account holders for the amount of the funds that they have deposited; *Wawrzynowicz* v. *Wawrzynowicz,* 164 Conn. 200, 202, 319 A.2d 407 (1972); *State* v. *Vars,* 154 Conn. 255, 262, 224 A.2d 744 (1966); imposes no special duty of care for the safekeeping of the funds on deposit.

The plaintiff's final two claims of error sound in contract rather than in tort. The plaintiff maintains that the terms of the agreement in the signature card were not met by the tender of the power of attorney, and that those terms were impliedly modified, as a matter of contract law, by the terms of the passbook, so that

its tender was a prerequisite to a valid withdrawal. The latter of these claims we have already addressed. We turn then to the question of the adequacy of the power of attorney as a valid order to the defendant to transfer funds out of the joint account.

The plaintiff argues that the defendant bank failed to introduce at trial any written withdrawal request signed either by Edward or by Dudek to validate the removal of funds from the joint account to the sole account. The power of attorney authorized Dudek "to do and perform" acts which the principal "might or could lawfully do if personally present," but that authority did not, according to the plaintiff, obviate taking the action which was required to effectuate a valid order of withdrawal. The trial court, in response to the plaintiff's motion for rectification of appeal, stated that the power of attorney constituted the requisite "valid order."

The defendant claims that the plaintiff cannot pursue this issue on appeal because it was not distinctly raised either in the pleadings or at trial. Practice Book § 3063. It is clear that the trial court was asked to consider, and did consider, whether the defendant bank had the general authority to act upon the valid order of one of the signatories of the joint account. The question is whether the trial court was also asked to consider what specific form a valid order was required to take so as to comply with the stipulation of the signature card permitting withdrawals "pursuant to any one or more of the joint tenants' signatures, shown below, in any manner in connection with this account."

The plaintiff maintains that the issue came before the trial court as soon as the signature card was introduced into evidence at the trial by the defendant. We disagree. Although the trial court was then called upon to determine whether the terms of the signature card required

production of the passbook as a condition of the withdrawal of funds from the joint account, we do not believe that the contours of the signature requirement itself were thereby clearly put before the court. Arguably the power of attorney, because it was a document bearing the signature of Edward, might suffice to meet the requirements of the signature card. The trial court's memorandum of decision does not, however, rest entirely on that document but finds that "Attorney Dudek presented the power of attorney to the defendant together with a withdrawal request for the total amount of the funds in the account." The plaintiff has not specifically assigned error to this finding of fact, although he does point out that no such withdrawal request was included in the exhibits at the trial. We cannot ourselves conclude what inference should be drawn from this evidentiary lacuna since the nonproduction of the withdrawal request may reflect that: (1) no one thought to ask for it; (2) it has been lost; or (3) it was never executed. At the trial, the plaintiff had the opportunity and the responsibility to explore this factual ambiguity. On the present state of the record, we decline to consider this issue further because we deem it not to have been clearly raised at the trial.

There is no error.

In this opinion HEALEY AND MENT, Js., concurred.

SHEA, J., with whom PARSKEY, J., joins, concurring. Once it has been determined that the defendant bank paid the funds in the account to an attorney acting pursuant to a valid power competently executed by Edward, the equitable owner of all the funds in the joint bank account, it becomes wholly unnecessary to consider whether there was a breach of any provision of the deposit agreement. As the majority opinion notes, "[t]he interest of the plaintiff [Harry] was limited to a right to whatever funds remained in the account upon

Edward's death." So long as the bank was willing, as it was, Edward, or the attorney acting for him, could waive or ignore any requirement for presentation of the passbook or a signed withdrawal order without obtaining Harry's consent. Payment of the funds in the account to the rightful owner or his duly authorized agent as requested was a complete performance of the bank's duty and there could then be no further liability.

Although I do not disagree with the elaborate analysis of the claimed contract violations contained in the majority opinion, I am concerned that its superfluity may create the misleading impression that, upon termination of an account and payment of the funds to the equitable owner, a bank may yet be liable to one whose interest in the account is limited to that of a surviving holder of a joint account. Once the funds in the account have been paid to the equitable owner in accordance with his demand, I do not see how another joint depositor, whose interest is limited to that of a survivor, can prevail upon a claim that the bank failed to comply with some term of the agreement establishing the account.

Accordingly, I agree with the result.