[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
By motion for summary judgment dated September 25, 2000, the defendant seeks judgment on all counts of the plaintiffs complaint, dated October 1, 1997. The court heard oral argument on October 18, 2000. For the reasons stated below, the court grants the motion for summary judgment as to count four and denies the motion for summary judgment as to counts one, two, three, five and six.
 I. PROCEDURAL BACKGROUND
In the complaint, the plaintiff, Rejeanne S. Cormier[1], alleges the following. On January 29, 1990, she executed a note in favor of the defendant, Ulster Savings Bank in the sum of $114,000. The note was secured by a mortgage on a home owned by the plaintiff, located at 174 Mark Street, Bristol, Connecticut. The plaintiff claimed that, in April, 1995, she submitted an application for a loan agreement in which she sought to rewrite her original mortgage at a lower principal balance. On May 30, 1995, the defendant issued a commitment letter to the plaintiff, effective through July 21, 1995, whereby the defendant agreed to rewrite the mortgage at a lower principal balance subject to a variety of terms and conditions. Among the terms and conditions was the statement "[y]ou are responsible for scheduling your closing." (Plaintiffs Complaint, Exhibit A, Ulster Savings Bank Commitment Letter.) The plaintiff claimed that she began to fulfill the conditions of the commitment letter and withdrew a substantial amount of money from her retirement account based upon the defendant's representations. Additionally, she claimed that she was ready, willing and able to close on the new loan at all relevant times. Complaint, Count one, ¶¶ 6-7.
Plaintiff further alleged that the defendant retained the services of Michael Romano and Associates to perform a title search on the property. The title search revealed an IRS tax lien on the property against the plaintiffs husband, Levite Cormier, even though he had no legal interest in the property. The defendant informed the plaintiff it would not close on the loan until the lien was released. Id., ¶¶ 8-11B.
On several occasions, the bank extended the deadline stated in the commitment letter. See Affidavit of Ellen Clewis, ¶¶ 8-12. Both the plaintiff and her husband made repeated requests of the defendant for a closing date throughout the second half of 1995. Exhibit C, deposition testimony of plaintiff, at 85-86; Exhibit H, Affidavit of Levite Cormier, ¶ 8. Despite these requests, plaintiff asserted, the defendant never provided plaintiff with a closing date. Id., 6 9. On December 20, 1995, the defendant issued a letter advising her that the loan application would be withdrawn due to inactivity if she did not close by January 19, 1996. Affidavit of Ellen Clewis, ¶ 11. Ultimately, the loan was never closed CT Page 14130
The defendant filed a motion for summary judgment and a memorandum of law accompanied by the plaintiffs deposition, the affidavit of Ellen Clewis of Ulster Savings Bank, the loan application, the commitment letter and various correspondence between the parties. The plaintiff timely filed an objection accompanied by nine exhibits, including affidavits from Rejeanne Cormier and Levite Cormier.
 II. STANDARD OF REVIEW
Practice Book § 17-49 provides summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital, 252 Conn. 193,201, 746 A.2d 730 (2000). "Summary judgment procedure, generally speaking, is an attempt to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial." Orensteinv. Old Buckingham Corp., 205 Conn. 572, 574, 534 A.2d 1172 (1987).
"Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Haesche v. Kissner, 229 Conn. 213, 217,640 A.2d 89 (1994); Burnham v. Karl Gelb. P.C., 50 Conn. App. 385,717 A.2d 811 (1998), aff'd, 252 Conn. 153, 745 A.2d 178 (2000). The opposing party must do more than merely assert the existence of a disputed issue of fact. See Burns v. Hartford Hospital, 192 Conn. 451, 455,472 A.2d 1257 (1984). "Mere assertions of fact . . . cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) Id. "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) Miller v. United Technlogies Corp.,233 Conn. 732, 751, 752, 660 A.2d 810 (1995).
"A "genuine issue has been variously described as a "triable', "substantial' or "real' issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted.)United Oil Co. v. Urban Redevelopment Commission of City of Stamford,158 Conn. 364, 378, 260 A.2d 596 (1969). "The genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings CT Page 14131 from which the material facts alleged in the pleadings can warrantably be inferred." (Internal quotation marks omitted.) Id., 378-379.
"A `material' fact has been defined adequately and simply as a fact which will make a difference in the result of the case." Id., 379. "Issue of fact encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them." (Internal quotation marks omitted.) Id. "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v.Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988).
 III. DISCUSSION A. Negligence — Count Four
Count four of the plaintiffs complaint alleges negligence. The defendant moves for summary judgment arguing there is no common law duty between a borrower and a lender. The plaintiff argues in opposition the duty owed to the plaintiff arises solely under the commitment letter.[2]
In the alternative, the plaintiff argues the defendant took on the role of plaintiffs financial advisor and as such owes her a fiduciary duty.
"Negligence is the breach of a duty. . . . The law does not recognize a breach of a duty in the air." (Internal quotation marks omitted.) Shorev. Town of Stonington, 187 Conn. 147, 151, 444 A.2d 1379 (1982). "Where there is no duty, there can be no actionable negligence. Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence." (Internal quotation marks omitted.) Frankovitch v. Burton,185 Conn. 14, 20, 440 A.2d 254 (1981).
It is well settled that under ordinary circumstances a bank does not owe its borrower a fiduciary duty. See Frigon v. Enfield Savings and LoanAssn., 195 Conn. 82, 87, 486 A.2d 630 (1985). Our courts have recognized, however, that under exceptional circumstances a fiduciary duty may be implicated. See e.g. Dunham v. Dunham, 204 Conn. 303,528 A.2d 1123 (1983) (a fiduciary duty could arise where there is "justifiable trust" on one side and a "resulting superiority and influence" on the other); Southbridge Associates, LLC v. Garofalo,53 Conn. App. 11, 18, 728 A.2d 1114 (1999) ("A bank, as a mortgage lender, may be the fiduciary of the mortgagor borrower when the bank becomes the borrower's financial advisor.") The plaintiff argues that the facts of this case present such an exceptional circumstance. To support this claim she contends that, when the defendant suggested the plaintiff CT Page 14132 withdraw money from her retirement fund, the defendant was acting as the plaintiffs financial advisor. The court is unpersuaded by this argument. The mere fact a bank suggests a borrower use her retirement fund to pay down the principal on a loan does not implicate a level of trust such that a fiduciary duty exists.
Construing the facts in the light most favorable to the plaintiff; seeWitt v. St. Vincent's Medical Center, 252 Conn. 363, 368, 746 A.2d 753
(2000); the court concludes the record discloses no relationship between the defendant, a lender, and the plaintiff, a borrower, on which to predicate a duty other than based on the commitment letter. Thus, the plaintiff cannot recover in negligence from the defendant. See RKConstructors, Inc. v. Fusco Corp., 231 Conn. 381, 384-85, 650 A.2d 153
(1994); see also Schonberger v. Citicorp Mortgage, Inc., Superior Court, judicial district of Hartford at Hartford, Docket No. 588093 (March 17, 2000, Fineberg, J.). Accordingly, the court grants the defendant's motion for summary judgment as to the fourth count.[3]
B. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing Counts One and Three
Counts one and three of the plaintiffs complaint sound in breach of contract and breach of the implied covenant of good faith and fair dealing, respectively. Both claims are based on the alleged failure of the defendant to provide a closing date and to close the loan over an IRS tax lien placed on the property. In support of its motion for summary judgment, the defendant argues the language of the commitment letter was clear when it stated the plaintiff was responsible for scheduling her closing. As such, the defendant argues that it did not breach the contract by not providing a closing date. The defendant further argues that the doctrine of the implied covenant of good faith and fair dealing cannot be applied to defeat the express terms of the commitment letter, and therefore, because the commitment letter expressly places the responsibility of scheduling the closing with the plaintiff, it has no liability.
Based on the evidence in the record, the court cannot determine who was responsible for the loan not closing. The plaintiff presented her deposition testimony[4] and her and her husband's affidavits to establish that she was ready and willing to close the loan. (See Plaintiff's Exhibit C, Deposition of Rejeanne S. Cormier, December 3, 1999, pp. 117-18; and Exhibits G and H, the affidavits of plaintiff and Levite Cormier) The defendant disputes this fact, citing that it extended the commitment letter on various occasions so the plaintiff could meet its terms and conditions and that on February 7, 1996, the commitment letter expired due to inactivity. (See Affidavit of Ellen Clewis, ¶¶ CT Page 141338-12.) Accordingly, the court finds genuine issues of material fact and hereby denies the defendant's motion for summary judgment as to counts one and three of the plaintiffs complaint.
 C. False Representation — Count Two
Count two of the plaintiffs complaint alleges false representation. The defendant moves for summary judgment arguing there is no evidence the defendant made false or untrue representations to the plaintiff. The plaintiff argues that the defendant represented in the commitment letter that it would close on the loan and a failure to do so was a false representation.
A person claiming to be a victim of fraud or misrepresentation must prove "that a false representation was made as a statement of fact; that it was untrue and known to be untrue by the party making it; that it was made to induce the other party to act on it; and that he did so to his injury." Paiva v. Vanech Heights Construction Co., 159 Conn. 512. 515,271 A.2d 69 (1970). Our courts recognize the general rule that a misrepresentation must relate to an existing or past fact. See Id. On the other hand, when a promise to do an act in the future is coupled with a present intent not to fulfill the promise a false representation may exist. Id.
As mentioned above, the plaintiff alleges the defendant misrepresented that it would rewrite the loan pursuant to the commitment letter. In support of this position she argues the loan was never closed despite her allegedly persistent efforts to schedule a closing date. The record discloses, however, the defendant had to extend the expiration date of the commitment letter on various occasions because the plaintiff had not yet met the conditions to close. Therefore, viewing the evidence in the light most favorable to the plaintiff; see Witt v. St. Vincent's MedicalCenter, supra, 252 Conn. 368; the court finds genuine issues of material fact as to whether the defendant's representation that it would close the loan pursuant to the commitment letter was untrue when the letter was issued and whether it was made to induce the plaintiff to act.[5]
Accordingly, the defendant's motion for summary judgment is hereby denied as to count two of the plaintiffs complaint.
 D. CUTPA — Count Five
Count five of the plaintiffs complaint alleges a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. (CUTPA). The defendant moves for summary judgment, arguing that there is no evidence the defendant acted in a manner that was more than a simple breach of contract. In opposition, the plaintiff argues the CT Page 14134 defendant's alleged misrepresentations constitute an aggravated circumstance that would allow a CUTPA violation to arise from a simple breach of contract claim.
CUTPA was enacted to protect the public from unfair trade or commercial practices. See Thames River Recycling, Inc. v. Gallo, 50 Conn. App. 767,794-95, 720 A.2d 242 (1998). CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a).
The Appellate Court has stated that "[t]he same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation." Lester v. Resort Camplands International, Inc.,27 Conn. App. 59, 71, 605 A.2d 550 (1992). When the superior courts have permitted a CUTPA cause of action based on a breach of contract, there generally has been some type of fraudulent behavior accompanying the breach or aggravating circumstances. See CNF Constructors, Inc. v.Culliaan Water Conditioning Co., Superior Court, judicial district of New Haven at Meriden, Docket No. 242302 (September 9, 1993, Blue, J.) (8 CSCR 1057, 1058) (permitting the plaintiff to pursue a CUTPA cause of action based on breach of contract because the misrepresentations "induced the contract"). "The question therefore becomes whether the plaintiff has alleged in its complaint the "substantial aggravating circumstances' attending the breach of contract necessary to establish a CUTPA violation." Tork v. Best Restaurant Equipment Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 430310 (October 21, 1999, Alander, J.).
The court's finding that there exist genuine issues of material fact as to whether a misrepresentation occurred precludes a finding here as to whether that alleged misrepresentation amounts to aggravated circumstances sufficient to support a CUTPA violation. Accordingly, the defendant's motion for summary judgment is hereby denied as to count five of the plaintiffs complaint.
 E. Equal Credit Opportunity Act — Count Six
Count six of the plaintiffs complaint alleges the defendant violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691e (1998). In support of its motion for summary judgment, the defendant argues that the Superior Court does not have subject matter jurisdiction over this claim because the statute reserves exclusive jurisdiction to the federal court. The Act states in relevant part, "[a]ny action under this section may be brought in the appropriate United States district court without regard to amount in controversy, or in any other court of competent CT Page 14135 jurisdiction." 15 U.S.C. § 1691e, supra.
"[I]t is black letter law . . . that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." (Internal quotation marks omitted.) Tafflin v. Levitt, 493 U.S. 455, 461, 110 S.Ct. 792,107 L.Ed.2d 887 (1990). "The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication." Gulf OffshoreCo. v. Mobil Oil Corp., 453 U.S. 473, 477-78, 101 S.Ct. 2870,69 L.Ed.2d 784
(1981). "In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction. . . . Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." (Citations omitted.) Id., 478.
The language of the statute is clear; jurisdiction is proper "in any other court of competent jurisdiction." 15 U.S.C. § 1691e, supra. Thus, the court finds that Congress did not explicitly reserve exclusive jurisdiction of the Equal Credit Opportunity Act for the federal courts as the defendant alleges. Accordingly, the defendant's motion for summary judgment is hereby denied as to count six of the plaintiffs complaint.
 IV. CONCLUSION
For the foregoing reasons, the motion for summary judgment is hereby granted as to count four and denied as to counts one, two, three, five and six. It is so ordered.
BY THE COURT,
 ROBER B. SHAPIRO JUDGE OF THE SUPERIOR COURT