CAROL GRASS *v.* KENNETH GRASS, EXECUTOR
(ESTATE OF ETHEL H. GRASS), ET AL.
(AC 16748)

Foti, Landau and Daly, Js.

---

658

Argued December 12, 1997—officially released February 10, 1998

*Roger Sullivan,* for the appellants (named defendant et al.).

*Edward Domnarski,* with whom, on the brief, were *Thomas A. Cloutier* and *Jeffrey C. Eddy,* for the appellee (plaintiff).

*Opinion*

FOTI, J. The defendants, Kenneth Grass, as executor of the estate of Ethel H. Grass, and Ronald Grass, appeal from the judgment rendered by the trial court that sustained the appeal by the plaintiff, Carol Grass, from an order of the Probate Court for the district of Madison.[1] The defendants[2] claim that the trial court improperly

---

[1] The plaintiff's appeal from the order of the Probate Court was taken pursuant to General Statutes § 45a-186. The plaintiff claimed that she was aggrieved by the order and decree of the Madison Probate Court, *McManus, J.,* that allowed the proceeds of the bank account at issue to be paid to the executor of the estate of Ethel Grass.

[2] The defendant Liberty Bank, where the decedent's bank account was opened, is not involved in this appeal. We refer in this opinion to Kenneth Grass and Ronald Grass as the defendants.

(1) determined that the bank account at issue was a joint deposit account within the meaning of General Statutes § 36a-290 and (2) imposed on the defendants the burden of establishing by clear and convincing evidence that the decedent did not intend to create such an account. We reverse the judgment of the trial court.

Because no record was made before the Probate Court, the trial court conducted a trial de novo and made an independent determination without regard to the result reached by the Probate Court. See *Andrews* v. *Gorby*, 237 Conn. 12, 14–17, 675 A.2d 449 (1996). The trial court found that on October 22, 1992, the decedent, Ethel H. Grass, met with Heather DeSilio, manager of the Liberty Bank in Clinton (bank), for the purpose of opening a regular savings account in her name and the name of her daughter, the plaintiff. She was told that the bank would allow her to open the account without her daughter being present. The account was opened with a temporary authorization card signed by Ethel H. Grass. An initial deposit of $60,000 was made by Ethel H. Grass, using a check drawn on her account with another bank. DeSilio then gave her a permanent authorization card for the purpose of obtaining her daughter's signature. The permanent authorization card contained Ethel H. Grass' signature and social security number, and the printed name of the plaintiff. The plaintiff never signed the authorization card, nor was she aware during her mother's lifetime of the existence of the account.[3]

Because the plaintiff's name appeared on the account, the bank set up the account as a joint account on its computer system. In addition, DeSilio testified that the plaintiff could have withdrawn funds from the account if a teller failed to verify whether her signed

[3] DeSilio testified that under the deposit account contract, the signature of each party named on the account is required before the account becomes a joint account as to that party and that the plaintiff, not having signed the authorization card, was not a joint account holder.

authorization card was on file; however, such a withdrawal would have been improper and would have subjected the bank to liability for any funds withdrawn without Ethel H. Grass' approval.

Following the initial deposit, there was no further activity on the account. Ethel H. Grass died on November 1, 1993.

The trial court concluded that the evidence established that the account was a joint account. The court then determined that the defendants had not sustained their burden to show, by clear and convincing evidence, that Ethel H. Grass did not intend to create joint ownership in the account and, therefore, had failed to rebut the statutory presumption created by § 36a-290.[4] Because we conclude, as a matter of law, that a joint account was never created, we find it unnecessary to address the second issue raised by the defendants.

A bank is indebted to its account holders for the amount of the funds that they have deposited. *Frigon* v. *Enfield Savings & Loan Assn.*, 195 Conn. 82, 87, 486 A.2d 630 (1985). Pursuant to § 36a-290 (a), "a bank is authorized to release up to the entire balance of a joint account to each and any coholder who so demands.

---

[4] General Statutes § 36a-290 provides in relevant part: "(a) When a deposit account has been established at any bank . . . in the names of two or more natural persons and under such terms as to be paid to any one of them, or to the survivor or survivors of them, such account is deemed a joint account, and any part or all of the balance of such account, including any and all subsequent deposits or additions made thereto, may be paid to any of such persons during the lifetime of all of them or to the survivor or any of the survivors of such persons after the death of one or more of them. . . .

"(b) The establishment of a deposit account . . . which is a joint account under subsection (a) of this section is, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, prima facie evidence of the intention of all of the named owners thereof to vest title to such account, including all subsequent deposits and additions made thereto, in such survivor or survivors, in any action or proceeding between any two or more of the depositors, respecting the ownership of such account or its proceeds. . . ."

. . . [T]his authorization not only provides protection for payor banks but also recognizes a sufficient property interest in each coholder to warrant characterizing all such deposits as a 'debt due' to each coholder . . . ." *Fleet Bank Connecticut, N.A.* v. *Carillo*, 240 Conn. 343, 350, 691 A.2d 1068 (1997). Our Supreme Court has stated that "[a] signature card is essential to the creation of a bank account . . . ." *Frigon* v. *Enfield Savings & Loan Assn.*, supra, 87.

It is clear that, under Connecticut law, " 'coholders of a joint account are considered owners of the entire account' . . ."; *Fleet Bank Connecticut, N.A.* v. *Carillo*, supra, 240 Conn. 351, quoting *Masotti* v. *Bristol Savings Bank*, 43 Conn. Sup. 360, 364, 653 A.2d 836 (1994), aff'd, 232 Conn. 172, 653 A.2d 179 (1995); with access to the entire amount therein. Whether a joint account has been established, however, depends solely on the deposit contract governing the account. See General Statutes §§ 36a-315 through 36a-323 (Deposit Account Contract Act).

In the present case, the only signed agreement between Ethel H. Grass and the bank was the authorization card, which the bank employed as its signature card for depositors. At the time the account was opened, however, the bank provided her with a deposit account contract, the provisions of which were incorporated by reference in the signature card. The deposit account contract provided in relevant part: "Joint Accounts. Accounts opened in the name of more than one (1) person . . . shall be held by us for the exclusive use of those persons *who sign an authorization form for the account* and may be paid to any of such persons during the lifetime of all of them or to the survivor or survivors of them." (Emphasis added.)

The plaintiff relies on *Alaimo* v. *First National Bank of Thompsonville*, 24 Conn. Sup. 369, 190 A.2d 924

(1963), for the proposition that a signature card need not be signed to create a joint account with a right of survivorship. The plaintiff's reliance is misplaced. In *Alaimo*, the court held that "where the intent of a deceased depositor to create a joint account and the bank's agreement to do so are sufficiently established, the survivor may take the balance, although there is no evidence he knew of the account."[5] Id., 373. In the present case, the clear language of the deposit account contract provided that the bank agreed to establish a joint account only as to "those persons who sign an authorization form."

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . In addition, [t]he circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used. . . . Finally, [t]he court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity.

---

[5] The signature card signed by the depositor in *Alaimo* v. *First National Bank of Thompsonville*, supra, 24 Conn. Sup. 369, stated: " 'We hereby agree to the By-laws . . . and the agreement printed on the reverse side.' . . ." Id., 370. The reverse side provided in relevant part: " 'We hereby agree with each other that any money which is now deposited or may hereafter be deposited to the joint credit of our account . . . shall be subject to the provisions of this agreement to the effect that either of us shall have full power at all times to draw . . . any or all of such money so deposited; and that upon the death of either of us, any money then standing to the credit of said joint account shall belong to the survivor' . . . ." Id., 370–71.

. . . *Venture Partners, Ltd.* v. *Synapse Technologies, Inc.*, 42 Conn. App. 109, 113–14, 679 A.2d 372 (1996). Therefore, its proper interpretation is a matter of law." (Internal quotation marks omitted.) *DeCarlo & Doll, Inc.* v. *Dilozir,* 45 Conn. App. 633, 638–39, 698 A.2d 318 (1997). "It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties. . . . [A]ny ambiguity in the contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Levine* v. *Massey,* 232 Conn. 272, 279, 654 A.2d 737 (1995).

We conclude that there is no ambiguity in the deposit account contract. The contract provides that each party must sign an authorization form (i.e., signature card) before he or she can properly obtain access to the funds in the account. Therefore, the signature of each party named on the account is a prerequisite to the establishment of a joint account as to that party.

In sum, the parties' rights and obligations are set forth in the deposit account contract, which contract is not ambiguous. The proper interpretation of the contract, therefore, is a matter of law. In determining that a joint account had been established, the trial court improperly examined the intent of Ethel H. Grass in opening the account, and because her intent was irrelevant, the judgment cannot stand.

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.