[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves two bank accounts established by the plaintiff, Brett L. Coplin, at Lafayette American Bank (Lafayette) which bank was later acquired by the named defendant, Hudson United Bank/HUD (Hudson). The complaint, which is dated February 15, 2000, contains three counts. In the first count, the plaintiff alleges that he opened both a checking account and a savings account at Lafayette
in June of 1988; that these two accounts were solely in his own name; and that on February 9, 2000, the defendant Hudson charged these accounts with $11,869.28 based on a debt owed to the defendant by the plaintiff's mother, Cheryl Coplin. The plaintiff further alleges that this conduct on the part of the defendant deprived him of the funds and constituted a CT Page 16913 slander of credit. In the second count, the plaintiff alleges that the defendant's actions constituted a conversion or theft in violation of General Statutes § 52-564. In the third count, the plaintiff claims that by charging his account for a debt owed by another person, and by making false representations, the defendant violated General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA). In his prayers for relief, in addition to claims for monetary damages, the plaintiff sought treble damages for statutory theft.
The defendant denied the material allegations of the complaint. Its counsel stated at one point that: "the thesis of this case is that two fraudulent checks were deposited into the account of Cheryl and Sherwin Coplin and then a setoff was taken against the account of Brett and Cheryl Coplin [and] that Ms. Cheryl Coplin [is] common to both accounts."
The case was referred to Attorney George W. Baker, an attorney trial referee, in accordance with General Statutes § 52-434(a) and Practice Book § 19-2. The referee submitted a report dated July 9, 2001, finding that: (1) the "account name" on the account authorization cards for the two bank accounts in question was in the plaintiff's name alone; (2) the plaintiff's mother, Cheryl Coplin, also signed the account authorization or signature cards but her name did not appear on the "account name" line; (3) the plaintiff testified that he instructed the defendant's predecessor that the account should be in his name alone, but he wanted his mother to have access to the funds in the event something happened to him, and on one occasion she did withdraw funds from one of his two accounts on her own signature; (4) the printed checks sent to the plaintiff from the defendant bank contained only his name, he alone gave the tax identification number for the account authorization cards and the monthly statements from the defendant contained only his name until the final statements of June 19, 2000, after this action had begun, when his mother's name appeared on the statements for the first time; (5) neither the defendant nor its predecessor furnished depository contracts or customer account agreements to the plaintiff; and (6) on February 2, 2000, the defendant deducted $11,869.28 from the plaintiff's savings account by way of a debit advice to set off a debt owed by the plaintiff's mother and/or father to the defendant.
The attorney trial referee concluded that: (1) the two bank accounts were solely in the name of the plaintiff and therefore the defendant had no right to charge his accounts to set off a debt owed by his mother; (2) although the plaintiff's mother was a signatory on the two accounts, and had the power of withdrawal, she was not the owner of those accounts; (3) the accounts were not "joint" accounts under General Statutes §36a-290(a) because they were not in the names of two persons, but rather CT Page 16914 in the plaintiff's name alone; and (4) under the terms of the defendant's deposit account agreement and disclosure form, a person may withdraw funds from another's bank account if properly authorized to do so without turning an individual account into a joint account.
The attorney trial referee recommended that judgment enter in favor of the plaintiff on the first count of his complaint for $11,869.28, plus prejudgment interest from February 2, 2000, the date of the charge, pursuant to General Statutes § 37-1 for money wrongfully withheld. The referee also recommended treble damages as authorized by General Statutes § 52-564 for conversion because the plaintiff had proved by clear and convincing evidence that the defendant's action in charging the plaintiff's account for the debt of another was done with the intent to wrongfully deprive the plaintiff of his own money. The referee determined that the plaintiff did not prove his CUTPA claim as there was no proof that the defendant made the misrepresentations attributable to it by the plaintiff.
The defendant filed objections[1] dated July 31, 2001, to the attorney trial referee's report.[2] The defendant claims that the attorney trial referee erred in that: (1) although the referee found that Cheryl Coplin signed the account authorization cards, had unrestricted access to the accounts, and made a withdrawal using her own signature, he failed to conclude that the accounts were "joint" as defined by General Statutes § 36a-290; and (2) the recommendation concerning treble damages was in error because the defendant's employee testified that she had received permission to offset these accounts from the defendant's security office and legal department based on the fact that Cheryl Coplin was a signatory on the accounts, and there was no proof by the plaintiff that the defendant knowingly and intentionally had stolen the plaintiff's money as required by General Statutes § 52-564.
Practice Book § 19-17(a) concerns the function of this court in reviewing reports of attorney trial referees and provides that: "[t]he court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another . . . attorney trial referee . . . for a new trial or revoke the reference and leave the case to be disposed of in court."
Killion v. Davis, 257 Conn. 98, 102-103, 776 A.2d 456 (2001), holds that the court's role in reviewing an attorney trial referee's report is as follows: first, "the trial court must review the referee's entire report to determine whether the recommendations contained in it are CT Page 16915 supported by findings of fact in the report." (Internal quotation marks omitted.) Id., 102. Second, the court must insure that the report does not contain "legal conclusions for which there are no subordinate facts." (Internal quotation marks omitted.) Id. Third, the report must be reviewed to determine if it is "legally and logically correct." (Internal quotation marks omitted.) Id. In this case, a transcript of the trial before the attorney trial referee was provided and, therefore, a preliminary task for this court is to determine whether there is evidence in the record to substantiate the factual findings made by the referee. See John M. Glover Agency v. RDB Building, LLC, 60 Conn. App. 640, 646,760 A.2d 980 (2000).
Other principles governing attorney trial referee reports provide that: "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees." (Citations omitted.) Wilcox Trucking, Inc. v. MansourBuilders, Inc., 20 Conn. App. 420, 423, 567 A.2d 1250, cert. denied,214 Conn. 804, 573 A.2d 318 (1989). The findings of fact in a contract action "should be overturned only when they are clearly erroneous."Wilcox Trucking, Inc. v. Mansour Builders, Inc., Id., 425. A fact-finder's recommendations should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and the reasonable inferences that may be drawn therefrom." Id.
The defendant has presented two issues in its objections to the attorney trial referee's report. The first is whether the two accounts are "joint" within the scope of General Statutes § 36a-290. The question is whether these accounts were established "in the names of two or more natural persons and under such terms as to be paid to anyone of them." The referee concluded that the account was solely in "the name" of the plaintiff, although his mother was authorized to remove funds from the accounts. The other issue in this present action is whether the plaintiff presented clear and convincing evidence that the defendant intentionally and knowingly deprived the plaintiff of his money, thus warranting the imposition of treble damages as authorized by General Statutes § 52-564. This statute provides that any person who "steals property of another" is liable for treble damages.
The first issue is whether the plaintiff was the "sole" owner of the two accounts in issue. Grass v. Grass, 47 Conn. App. 657, 661,706 A.2d 1369 (1998), indicates that: "Whether a joint account has been established, however, depends solely on the deposit contract governing the account. See General Statutes §§ 36a-315 through 36a-323 (Deposit CT Page 16916 Account Contract Act)." In this case, the "account ownership" part of the deposit agreement refers to, among other types of accounts, "individual" and "joint with right of survivorship" but was left blank on the form. The portion of the form that requires that the signatory certify, under the penalty of perjury, that the tax identification number is accurate and that no money is owed to the Internal Revenue Service, was signed only by the plaintiff, not his mother. Under "customer service account name," only the name "Brett L. Coplin" appears. Both the plaintiff and Cheryl Coplin signed under "customer signature."
The account authorization refers to the deposit contract as the "Lafayette American Bank Trust Co. Deposit Account Agreement and Disclosure Information." Under "Withdrawals" this agreement provides that: "The Bank, may, in its sole discretion allow another person to make a withdrawal from your account if that person presents satisfactory proof of that person's authority to make the withdrawal." This section is different from another part of the deposit agreement pertaining to "joint accounts" which provides, in pertinent part, that if an account is "in the names of two or more individuals," it is considered a "joint account with right of survivorship as defined in the Section 36-3 of the Connecticut General Statutes or the successors to that Statute."
There is sufficient evidence in the record to justify the ruling of the attorney trial referee that the sole owner of the account was the plaintiff.[3] The plaintiff also introduced a number of monthly statements issued by the defendant which were only in his name.[4] With respect to the actual checks, the plaintiff testified that he received preprinted checks from the defendant in his name alone.[5]
It is quite evident that the referee chose to believe the testimony offered by the plaintiff regarding the establishing of the two accounts and his inclusion of his mother's name. "The finder of fact is in a better position to determine the credibility of witnesses and the weight to be accorded their testimony." Beizer v. Goepfert, 28 Conn. App. 693,706, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992), cert. denied, 507 U.S. 973, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993). Moreover, "[w]hether and on what terms a contractual commitment has been undertaken are ultimately questions of fact for the trier of fact."Presidential Capital Corp. v. Reale, 231 Conn. 500, 507, 652 A.2d 489
(1994).
In this case, the attorney trial referee determined that the defendant breached the contract between itself and the plaintiff by invading the plaintiff's accounts for the debt of another person who was not the owner thereof. "[A] bank is indebted to its account holders for the amount of the funds that they have deposited." Frigon v. Enfield Savings LoanCT Page 16917Association, 195 Conn. 82, 87, 486 A.2d 630 (1985). Thus, he recommended that the plaintiff recover the amount in question, plus interest as authorized by General Statutes § 37-3a for "damages for the detention of money after it becomes payable. . . ." The awarding of prejudgment interest is an issue for the trier of fact. Foley v. Huntington Co.,42 Conn. App. 712, 738, 682 A.2d 1026, cert. denied, 239 Conn. 931,683 A.2d 397 (1996). 10% interest on $11,869.28 from February 2, 2000 to the date of this judgment, amounts to $2,235.37.
As noted previously, the attorney trial referee also recommended that the plaintiff recover treble damages under General Statutes § 52-564. The application of this statute to the facts of this case is a matter of law for the court to decide. Corcoran v. Taylor, 65 Conn. App. 340, 344,782 A.2d 728, cert. denied, 258 Conn. 925, 783 A.2d 1027 (2001). "Statutory theft under § 52-564 is synonymous with larceny under General Statutes § 53a-119," which involves an "intent to deprive another of property or to appropriate the same to himself or a third person [he] wrongfully takes, obtains or [withholds] such property from an owner." Suarez-Negrete v. Trotta, 47 Conn. App. 517, 520-21, 705 A.2d 215
(1998).
The proof that the defendant committed statutory theft was that the defendant did in fact charge the plaintiff's account for the debt of his mother, and refused the plaintiff's requests to recredit his account, thus precipitating this law suit. On the other hand, the testimony suggests that in making this set off, the defendant was attempting to implement its own bank policy which it believed to be legally correct. The defendant's branch manager testified that she only charged the plaintiff's accounts after checking with the defendant's legal division.[6]
Under these circumstances, the court cannot agree that, as a matter of law, the plaintiff proved by clear and convincing evidence that the defendant willfully and wrongfully intended to deprive the plaintiff of money that he owned.[7] Although treble damages are not awarded, the defendant is not only obliged to repay the money it took from the plaintiff's account, it must also pay 10% interest per year on that sum for a wrongful withholding of money.
Thus, judgment enters in favor of the plaintiff to recover $11,869.28, plus prejudgment interest in the amount of $2,235.37, for a total judgment of $14,104.65.
Costs are to be taxed in favor of the plaintiff by the clerk of this court in accordance with General Statutes § 52-25 and Practice Book § 18-5. CT Page 16918
So Ordered.
Dated at Stamford, Connecticut, this 20th day of December, 2001.
William B. Lewis, Judge T.R.