FAIRFAX PROPERTIES, INC., ET AL. *v.*
CHRISTOPHER O. LYONS ET AL.
(AC 21559)

Dranginis, Bishop and Dupont, Js.

Argued February 21—officially released September 24, 2002

*Robert A. Harris,* for the appellant (plaintiff Fairfax Properties, Inc.).

*David S. Hardy,* with whom, on the brief, was *Anthony M. Fitzgerald,* for the appellees (defendant Christopher O. Lyons et al.).

*James R. Fogarty,* for the appellee (Fairfax Properties, Inc.).

*Opinion*

DUPONT, J. The plaintiff Fairfax Properties, Inc. (Fairfax),[1] acting by George C. Lyons, Jr. (George, Jr.), appeals from the judgment of the trial court dismissing its cause of action brought pursuant to General Statutes

[1] Mark Lyons and Daria Lyons O'Connor also are plaintiffs. They have not appealed from the judgment of the trial court dismissing the cause of action that is at issue in this appeal. We therefore refer in this opinion to Fairfax as the plaintiff.

§ 33-743[2] seeking injunctive relief and the removal of two directors of Fairfax. The plaintiff's complaint, filed by the law firm Zeldes, Needle & Cooper, P.C., alleges that the defendants, Christopher O. Lyons and William C. Lyons, Sr., abused their authority and discretion as directors of Fairfax by failing to appoint an additional director in contravention of a unanimous resolution of the shareholders dated June 21, 1999. The judgment of dismissal was rendered before any answer was filed and was based on the jurisdictional claim that George, Jr., lacked authorization to bring the complaint on behalf of Fairfax. The judgment of dismissal was in response to two motions for dismissal, one filed on April 28, 2000, by the defendants and the other filed on May 8, 2000, by the law firm Fogarty, Cohen, Selby & Nemiroff, LLC, on behalf of Fairfax. The court ruled only on the motion that was filed by the defendants.

Prior to the dismissal of the complaint on January 2, 2001, the court on May 22, 2000, granted the motion of William C. Lyons, Jr. (William, Jr.), and Timothy P. Lyons, two other shareholders of Fairfax, to be joined as parties plaintiff. Subsequently, the defendants filed a motion to reargue. In its memorandum of decision, the court granted the defendants' motion to dismiss and acted on the motion to reargue by vacating its prior order to grant joinder. William, Jr., and Timothy

[2] General Statutes § 33-743 provides: "(a) The superior court for the judicial district where a corporation's principal office or, if none in this state, its registered office is located may remove a director of the corporation from office in a proceeding commenced either by the corporation or by its shareholders holding at least ten per cent of the outstanding shares of any class if the court finds that (1) the director engaged in fraudulent or dishonest conduct or gross abuse of authority or discretion, with respect to the corporation and (2) removal is in the best interest of the corporation.

"(b) The court that removes a director may bar the director from reelection for a period prescribed by the court.

"(c) If shareholders commence a proceeding under subsection (a) of this section, they shall make the corporation a party defendant."

P. Lyons thereafter did not appeal from the vacation of the order that, in effect, denied joinder.

This case is complicated by the fact that Fairfax is a corporation that is primarily owned and operated by one family, all of whom are descendents of George W. Lyons, Sr. (George, Sr.), who founded the parent company of Fairfax. Most of the individuals connected with this action share the same surname, with some also sharing the same given name, distinguished only by the designations of junior and senior.

This case is further complicated by the fact that two attorneys with adverse positions have filed an appearance on behalf of Fairfax. The complaint was filed for the plaintiff Fairfax by attorney Robert A. Harris of Zeldes, Needle & Cooper, P.C. A February 25, 2000 resolution, adopted by a four to two vote of the board of directors, via a telephone conference call, stated that the actions of the plaintiff's attorney was without the authority of Fairfax and, "ultra vires, and not for the benefit of and in the best interest" of Fairfax. The resolution also stated that "Fogarty, Cohen, Selby & Nemiroff, LLC be and they hereby are retained and appointed as attorneys to represent [Fairfax] in the Action, and in any related matters including the recovery of any damages to which [Fairfax] may be entitled; and to take such actions in connection therewith as the President shall in his discretion determine."

In the defendants' memorandum of law in support of the motion to dismiss, they state that "the majority of the [b]oard voted that this suit be withdrawn. It authorized the hiring of James R. Fogarty to act as [Fairfax's] counsel in doing so. Mr. Fogarty, will, simultaneously with the filing of this motion, enter his appearance for [Fairfax] and withdraw the claim made on its behalf." On April 27, 2000, Fogarty, Cohen, Selby & Nemiroff, LLC, filed an appearance for the plaintiff,

Fairfax Properties, Inc., which stated that it was "in addition to appearance already on file."[3]

The very narrow issue in this appeal is whether a *shareholders'* unanimous resolution on June 21, 1999,

[3] Fogarty did not file an appearance in lieu of Harris and then file a motion to withdraw the action. Instead, on May 8, 2000, he filed a motion to dismiss counts one and two of the complaint, the corporate causes of action, on the basis of a claim of lack of subject matter jurisdiction. The motion alleged that George, Jr., lacked authority to initiate the action on behalf of Fairfax. Fogarty thus took a position identical to that of the individual defendants and inimical to that of Fairfax as the plaintiff. Fogarty has continued to act as if Fairfax were a defendant throughout this action with the explicit knowledge of the court, as is clear from the transcript of the hearing on the motion to dismiss.

The law firm Fogarty, Cohen, Selby & Nemiroff, LLC, filed a brief on behalf of Fairfax as a defendant-appellee, although the firm's appearance was for the plaintiff, Fairfax, "in addition to appearance already on file." The brief of the plaintiff-appellant was filed by the law firm Zeldes, Needle & Cooper, P.C., as "counsel of record for plaintiffs-appellants Fairfax Properties, Inc."

On April 12, 2002, this court directed the parties to appear on April 30, 2002, "to give reasons, if any, regarding . . . [w]hy the brief captioned 'Brief of the defendant-appellee,' filed on behalf of Fairfax Properties, Inc., by Fogarty, Cohen, Selby & Nemiroff, LLC, should not be stricken as an improper brief, as the record reflects that Fairfax Properties, Inc., was the plaintiff below and is the plaintiff-appellant in this appeal."

We do not strike the brief because its filing caused no actual confusion or prejudice, and both counsel were at all times candid with the court concerning the nature and thrust of their representation. We take this opportunity, however, to address the difficult issue of professional conduct when counsel are confronted with a disagreement as to who speaks for the corporation.

When Connecticut adopted the Rules of Professional Conduct, it embraced the "entity notion" of corporate representation. Thus, "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." Rules of Professional Conduct 1.13 (a). "Hence, a corporation's lawyer is not employed 'by' its officers or board of directors, but 'by' and 'for' the corporation acting *through* those agents." (Emphasis in original.) 1 G. Hazard & W. Hodes, The Law of Lawyering (2d Ed. 1990) § 1.13:105, p. 393. In adopting the entity theory of corporate representation, the drafters of the model rules rejected the competing view that a corporate lawyer represents the group of people who comprise corporate leadership, e.g., the board of directors and principal officers. In fastening on the corporation itself as the client, the drafters intended to avoid the

gave George, Jr., the continuing authority to act as an agent on behalf of the corporation to initiate an action to enforce an agreement to elect a seventh director to the Fairfax board, regardless of a subsequent vote of a majority of the *board of directors* rescinding that authority. We start by outlining the appropriate standard of review for examining actions taken by a trial court on a motion to dismiss that is based on a claim of lack of standing to initiate the action. A lack of standing implicates the jurisdiction of the court.

"A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Doe* v. *Roe*, 246 Conn. 652, 660, 717 A.2d 706 (1998); see *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 610–11, 793 A.2d 215 (2002). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing

conflict of interest that can arise when corporate leadership is at odds. Id. Accordingly, at the outset, when counsel are retained, they must make a diligent effort to determine whether the individuals who seek to retain legal services on behalf of the corporation are acting with corporate authority, and once that decision is made, counsel must exercise care to represent only the entity and not others whose interests may not be identical to that of the corporation.

Our rules of practice contemplate a process for resolving conflicts over representation in pending cases. Practice Book § 3-8 provides, in part, that if an attorney files an appearance in lieu of another attorney's appearance, the successor attorney must provide notice to the attorney whose appearance is being replaced. The rule further provides the initial attorney an opportunity to object to the subsequent appearance. Had that procedure been followed, the court would have been given an early opportunity to determine which, if either, law firm properly represented the interests of Fairfax in the pending litigation.

them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . ." (Internal quotation marks omitted.) *Brookridge District Assn.* v. *Planning & Zoning Commission*, supra, 611.

Practice Book § 10-31 (a) provides in relevant part that "[t]he motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter. . . . This motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record." "When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) *Lampasona* v. *Jacobs*, 7 Conn. App. 639, 642–43, 509 A.2d 1089 (1986), cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d 590 (1989), quoting *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 56, 459 A.2d 503 (1983). In this case, a hearing was held, but no testimony was taken or evidence presented. Prior to the hearing, depositions had been taken, and affidavits filed.

The following procedural history and the facts that were before the trial court are relevant to our resolution of the plaintiff's appeal. Until June, 1999, Fairfax was a wholly owned subsidiary of The Bilco Company (Bilco). Bilco was formed more than seventy years ago by George, Sr. When disputes arose over the operation of Bilco, the descendents of George, Sr., decided to divide Bilco's assets, including Fairfax. Effective June 21, 1999, Fairfax ceased being a subsidiary of Bilco, and ownership was transferred to the families of George, Sr.'s three sons, George, Jr., William, Sr., and Edward Lyons. There were twenty-four family members taking ownership of Fairfax as shareholders.

In connection with the separation from Bilco, a document entitled "Structure of Fairfax Properties, Inc. Board of Directors After Bilco Restructuring" was drafted. The family members refer to that document as the "BOD term sheet," and that document will be referred to as such in this opinion. The BOD term sheet set forth procedures for electing a seven member board of directors for Fairfax. As a result of the process to elect directors, each of George, Sr.'s sons' families would have two directors appointed to the board. In regard to the seventh director, the BOD term sheet states: "The six (6) board members so elected shall unanimously appoint (1) board member who is not related through blood or marriage to any of the shareholders, and the person so appointed must be a professional knowledgeable and experienced in the business of the Company (the 'outside director')."

As part of the June 21, 1999 restructuring of Fairfax, the shareholders unanimously enacted a resolution that incorporated the BOD term sheet and was entitled "Consent Resolution of the Shareholders of Fairfax Properties, Inc." (consent resolution). A portion of the consent resolution adopted all of the agreements in the BOD term sheet.[4] A second portion, which gave George, Sr.'s three sons the power to enforce the resolution, states: "Resolved, that William C. Lyons, Sr., George W. Lyons, Jr., and Edward F. Lyons be and hereby are duly authorized, directed and empowered, to act as agents

---

[4] The consent resolution states in relevant part: "Resolved, that the Company hereby amends its Bylaws to conform in all aspects with the terms and conditions of governance set forth in the document entitled 'Structure of Fairfax Properties, Inc. Board of Directors After Bilco Restructuring' (the 'BOD Term Sheet') it being understood and agreed that to the extent the Bylaws as written prior to this amendment conflict with the BOD Term Sheet, the BOD Term Sheet shall prevail, and that the Company be and hereby is authorized, directed and empowered to take such other actions as may be necessary to fully implement the terms of the BOD Term Sheet . . . ."

of the Company, acting *individually or jointly*, for purposes of taking any and all action as is necessary on behalf of the Company to fully implement and effect each of the foregoing resolutions, including, without limitation, the authority to execute and deliver on behalf of the Company any and all confirmations, agreements, instruments and other documents as are required to fully and completely implement and effect each of the resolutions and the actions contemplated thereunder."[5] (Emphasis added.) It is the consent resolution that the plaintiff claims, in the first count of its complaint, authorized George, Jr., to bring the action.[6] In accordance with the June 21, 1999 resolution, a settlement agreement was executed, shares of stock were issued and the Fairfax board of directors was empowered to act.

Relying on the affidavit of William C. Lyons, Sr., and Edward F. Lyons, which affidavit was an exhibit in support of the motion to dismiss that was filed April 28, 2000, the defendants argue that the June 21, 1999 resolution "merely intended to allow the implementation of the closing of the Settlement and Reorganization Agreement with the Bilco Company and others, and of various 'housekeeping' tasks until the new Board of Directors could meet and take control of Fairfax's affairs, and was not intended to usurp in perpetuity the authority and powers of the Board." Thus, the individual directors themselves agree that a new board of directors had to be named in the future to conduct the business of the corporation.

---

[5] A copy of the consent resolution was attached to the affidavit of William C. Lyons, Sr., and Edward F. Lyons, which affidavit was an exhibit in support of the motion to dismiss that was filed April 28, 2000.

[6] There were three counts in the complaint. We are only concerned with count one because two and three concerned the other two plaintiffs who have not appealed, and Fairfax, on appeal, seeks a reversal as to count one only.

Pursuant to the BOD term sheet, six directors were selected, including the defendants, William, Sr., and Christopher O. Lyons.[7] Once the board was formed and the six directors were in place, members of the board began to make efforts to recruit and appoint a qualified outside seventh director.

The complaint alleges that two of the plaintiffs, directors, Mark C. Lyons, son of George, Jr., and Daria Lyons O'Connor, daughter of George, Jr., attempted, without success to obtain the cooperation of the other four directors to appoint a seventh director. The complaint alleges that the defendants thwarted the efforts to appoint a seventh director by expressing their belief that a seventh director was not necessary, refusing to participate in interviews with candidates, proposed only candidates who had a close connection to the defendants, discouraged qualified candidates from agreeing to serve, exerted familial pressure to delay the appointment of a seventh director and admitted that a seventh director would imperil the compensation being paid to the defendant Christopher O. Lyons, who also serves as the managing director of Fairfax.

The complaint also alleges that the defendants have caused Fairfax to take substantive business actions that should only have been carried out with the input of a seventh director, including the sale of 667 acres in New Mexico. The complaint also alleges other specific instances of impropriety, including the failure to disclose details of financial transactions and the action of electing officers for Fairfax, despite the protest by the plaintiffs that the seventh director should be elected before taking such action.

Prior to the filing of the motion to dismiss, shareholder William, Jr., on March 29, 2000, and shareholder

---

[7] Christopher O. Lyons is the son of Edward Lyons. Two of the other directors included Kathleen Serio, daughter of William, Sr., and Peter Lyons, son of Edward Lyons. Serio and Peter Lyons are not parties to this case.

Timothy P. Lyons on April 3, 2000, each separately filed motions for leave to be joined as parties plaintiff.[8] On May 15, 2000, they filed a joint memorandum in support of their motions. They argued that they had an interest in the action as shareholders and that their joinder was necessary because their shares, combined with the shares of the parties plaintiff named in the complaint, would exceed the 10 percent required by § 33-743 (a) and, therefore, the defendants' motion to dismiss that was filed on April 28, 2000, would have to be denied. They also argued that if the joinder were not allowed and the case were dismissed due to lack of subject matter jurisdiction, "it is fairly easy to predict that the next step for all five [potential plaintiffs] . . . will be to file another complaint, this time listing all five parties along with the shares they own, beginning a brand new action with the same allegations."[9] They argued that this would be a waste of judicial resources. Both of those motions were granted on May 22, 2000, and William, Jr., and Timothy P. Lyons were added as parties plaintiff.

On June 6, 2000, William, Jr., who had been recently made a party plaintiff, filed a motion to cite in Fairfax as a party defendant.[10] On June 15, 2000, the defendants objected to the motion to cite in Fairfax as a defendant and argued that the court could not adjudicate that motion until it had ruled on their motion to dismiss.

---

[8] Neither William, Jr., nor Timothy P. Lyons is a director.

[9] Such an action was, in fact, filed by William, Jr., and Timothy P. Lyons, and by Mark C. Lyons and Daria Lyons O'Connor, who originally were plaintiffs in the current action, but who are not part of this appeal. The subsequent action was filed on November 23, 2001, seeking the removal of the defendants as directors pursuant to General Statutes § 33-743. George, Jr., is not a plaintiff in that action.

[10] The motion was made to comply with General Statutes § 33-743 (c), which requires shareholders to make the corporation a party defendant, if they, shareholders with 10 percent of the outstanding shares, have commenced a proceeding pursuant to § 33-743 (a).

On that day, the defendants also filed a motion for reconsideration and argued that the court's decision to grant William, Jr., and Timothy P. Lyons' motion for leave to be joined as parties plaintiff should not have been adjudicated while the motion to dismiss for lack of subject matter jurisdiction was pending.

On January 2, 2001, the court granted the individual defendants' motion to dismiss.[11] The court stated in its ruling that "the June 21 resolutions were intended to address the anticipated procedural needs of [Fairfax] during its transition from a subsidiary of Bilco to an independent company and was not intended to serve as a continuing source of authority." On the same date, the court also vacated its prior granting of the motion to join as parties plaintiff that had been filed by William, Jr., and Timothy P. Lyons.

Whether the court should have considered the motion to join additional plaintiffs before determining whether the case should be dismissed is not before this court because the plaintiff interveners did not appeal from the decision to vacate the motion to grant joinder, even though that ruling is an appealable final judgment. See *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 141, 758 A.2d 916 (2000).[12] If the

---

[11] The court did not act on Fairfax's motion to dismiss that was filed by attorney Fogarty. The grounds for the motions to dismiss were identical, however, and the failure to act on Fairfax's motion does not affect this appeal.

[12] Usually, when the issue of subject matter jurisdiction arises, it must be determined before any other matters can be considered and rulings made thereon. *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 99, 680 A.2d 1321 (1996); *Baldwin Piano & Organ Co.* v. *Blake*, 186 Conn. 295, 297–98, 441 A.2d 183 (1982); *Kohn Display & Woodworking Co.* v. *Paragon Paint & Varnish Corp.*, 166 Conn. 446, 448, 352 A.2d 301 (1974). There is decisional authority, however, that allows an amendment to a complaint to add an alternative basis for subject matter jurisdiction after jurisdiction has been questioned. *LaBow* v. *LaBow*, 171 Conn. 433, 370 A.2d 990 (1976); see also *DiLieto* v. *County Obstetrics & Gynecology Group*, Superior Court, judicial district of Waterbury, Docket No. 150435 (January 31, 2000) (26 Conn. L. Rptr. 345); see also General Statutes § 52-109; Practice

court properly could have considered the motion to join before acting on the motion to dismiss, the court would have had jurisdiction because the two shareholders who sought joinder would have provided a statutory cause of action due to their holding of at least 10 percent of the shares pursuant to § 33-743 (a).[13]

The court found that the June 21, 1999 resolution and the BOD term sheet were "intended to address the anticipated procedural needs of [Fairfax] during its transition from a subsidiary of Bilco to an independent company and was not intended to serve as a continuing source of authority. . . . The document was drafted to facilitate the closing, settlement and reorganization of the Bilco Company and the distribution of Fairfax stock to the settling shareholders. Pursuant to the resolutions, a settlement agreement was executed, shares of stock were issued and the Fairfax board was empowered to act."

When the language of a contract is clear and unambiguous, the intent of a contract is a matter of law. See *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 232, 654 A.2d 342 (1995); *Grass* v. *Grass*, 47 Conn. App. 657, 662-63, 706 A.2d 1369 (1998); *Expressway Associates II* v. *Friendly Ice Cream Corp.*, 22 Conn. App. 124, 127, 576 A.2d 575 (1990), rev'd in part on other grounds, 218 Conn. 474, 590 A.2d 431 (1991); see also *Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 286, 757 A.2d 526 (2000). "Where . . . there is clear and definitive contract language, the scope and meaning of that lan-

Book § 9-20.

In *Federal Deposit Ins. Corp.*, the third party plaintiff wanted to amend its complaint in an attempt to make it fit "within the parameters of the limited waiver of the state's sovereign immunity . . . ." *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, supra, 239 Conn. 100. In the current case, the movants desired to be joined as parties plaintiff and did not seek to amend the allegations of the complaint.

[13] See footnote 2.

guage is not a question of fact but a question of law." (Internal quotation marks omitted.) *Alco Standard Corp.* v. *Charnas*, 56 Conn. App. 568, 571, 744 A.2d 924 (2000). In the current case, no testimony was required as to intent because intent was not an issue of fact.

The language of the June 21, 1999 consent resolution, on which George, Jr., claims that his authority is based, states that he is "duly authorized, directed and empowered, to act as [an agent] of [Fairfax], *acting individually or jointly*, for purposes of taking *any and all* action as is necessary on behalf of [Fairfax] to fully implement and effect each of the foregoing resolutions . . . ." (Emphasis added.) The resolutions signed by all of the shareholders also incorporated the terms of the BOD term sheet and stated that the bylaws shall "conform in all respects with the terms and conditions of governance set forth in the [BOD term sheet] . . . ." The resolution also stated that in a situation in which the bylaws conflict with the BOD term sheet, the BOD term sheet shall prevail.

It is clear from the language in the resolution that the shareholders intended to enforce the BOD term sheet fully and that all three brothers were authorized to take *any* action to enforce that agreement, including the filing of a lawsuit. The defendants' position that the resolution did not authorize this action is in direct conflict with the clear language of the resolution. This court will not alter the language of the resolution due to the defendants' claim that such language was only a ministerial delegation of authority only.

The defendants also argue that the doctrine of ejusdem generis should apply to the language of the resolution. The doctrine of ejusdem generis is a rule of construction and applies when "(1) the [clause] contains an enumeration by specific words; (2) the members of the enumeration suggest a specific class; (3)

the class is not exhausted by the enumeration; (4) a general reference [supplements] the enumeration . . . and (5) there is [no] clearly manifested intent that the general term be given a broader meaning than the doctrine requires. . . . It rests on particular insights about everyday language usage. When people list a number of particulars and add a general reference like 'and so forth' they mean to include by use of the general reference not everything else but only others of like kind." (Citation omitted; internal quotation marks omitted.) *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, 239 Conn. 284, 297, 685 A.2d 305 (1996).

The doctrine of ejusdem generis is not applicable to the current case because the third paragraph of the consent resolution explicitly incorporates the BOD term sheet. The following paragraph authorizes George, Jr., to "fully implement and effect each of the foregoing resolutions . . . ." The language of the June 21, 1999 resolution also states: "These resolutions shall not take effect until the closing (as defined under the settlement agreement), at which time, such resolutions shall be deemed in full force and effect." In addition, that language does not support the court's finding that the document was not a continuing source of authority with respect to enforcing the terms of the BOD term sheet and was limited to the period of transition from a subsidiary to an independent corporation. According to the language of the resolution, the authority on which George, Jr., relies did not even begin until the closing took place. After the closing, Fairfax already would be an independent corporation, separate from Bilco. The language of the resolution indicates that its terms continue into the future to ensure that the resolution and the BOD term sheet are properly executed *after the closing*.

The language of the BOD term sheet also indicates that the document would have effect in the future. The

BOD term sheet describes the procedure for changing the formation of the board of directors. It states that "[t]he board structure described above shall remain in place for a minimum of two (2) years; thereafter, it may be altered if the board (by majority vote) so recommends to the shareholders and such recommendation is approved by a super majority vote (being the affirmative vote of shareholders owning at least 67% of the issued and outstanding stock . . . ." Thus, the board structure, including the requirement of a seventh director was guaranteed for at least two years.

The trial court found that the BOD term sheet "was intended to address the anticipated procedural needs of [Fairfax] . . . ." The formation of a board of directors is essential to the normal operation of a corporation and is a procedural need of a corporation. According to General Statutes § 33-735, "(a) each corporation shall have a board of directors [and] (b) [a]ll corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed by or under the direction of, its board of directors . . . ." The number of board of directors shall be "specified in or fixed in accordance with the certificate of incorporation or bylaws." General Statutes § 33-737 (a). "The number of directors may be increased or decreased from time to time by amendment to, or in the manner provided in, the certificate of incorporation or the bylaws." General Statutes § 33-737 (b).

The BOD term sheet stated the procedure for electing the board of directors. Even the defendants state in their brief that the June 21, 1999 resolution authorized George, Jr., or his brothers to "execute and otherwise deal with instruments necessary to put the agreed board structure into effect . . . ."

We conclude that the election of a full board of directors as directed by the BOD term sheet was an essential

procedural need of the corporation and the shareholders, and could not be altered by a majority of the six members of the board of directors. We therefore hold that that the shareholders unanimously gave George, Jr., authority to act as an agent on behalf of the corporation to enforce the agreements set forth in the BOD term sheets as adopted by the June 21, 1999 resolution.

Having determined that the June 21, 1999 resolution gave George, Jr., the authority to initiate the action on behalf of the plaintiff Fairfax, we next address the four to two vote of the board of directors, which declared that George, Jr., did not have authority to initiate the action and that his actions were "ultra vires."

The BOD term sheet and the June 21, 1999 resolution were, in essence, a valid shareholder agreement that set forth the parameters of electing a board of directors. See General Statutes § 33-717 (a) (3).[14] According to General Statutes § 33-717 (b), "[a]n agreement authorized by this section shall be: (1) Set forth (A) in the certificate of incorporation or bylaws and approved by all persons who are shareholders at the time of the agreement or (B) in a written agreement that is signed by all persons who are shareholders at the time of the agreement and is made known to the corporation; (2) subject to amendment only by all persons who are shareholders at the time of the amendment, unless the agreement provides otherwise; and (3) valid for ten years, unless the agreement provides otherwise."

According to that statute, the board of directors would not have the power to alter the agreements

---

[14] General Statutes § 33-717 (a) provides in relevant part: "An agreement among the shareholders of a corporation that complies with this section is effective among the shareholders and the corporation even though it is inconsistent with one or more other provisions of sections 33-600 to 33-998, inclusive, in that it . . .

"(3) Establishes who shall be directors or officers of the corporation, or their terms of office or manner of selection or removal . . . ."

because the documents did not give them the authority to repeal those rights set forth. The agreement did outline a procedure for altering the future makeup of the board of directors, after two years, but that authority is not the same as recanting the authority of George, Jr., to take action to enforce the BOD term sheet as set forth in the June 21, 1999 resolution, which had been adopted unanimously by the shareholders. Also, the authority to alter the configuration of the board of directors would require the approval of 67 percent of the total shareholder votes in addition to a recommendation by the board of directors.

The June 21, 1999 resolution states "that [Fairfax] hereby amends its Bylaws to conform in all respects with the terms and conditions of governance set forth in the [BOD term sheet] it being understood and agreed that to the extent the Bylaws as written prior to this amendment conflict with the BOD Term Sheet, the BOD Term Sheet shall prevail . . . ." As such, the BOD term sheet was an amendment to the bylaws of Fairfax. According to General Statutes § 33-806,[15] the board of directors can amend the bylaws of the corporation, but only if the bylaws or certificate of incorporation does not reserve such power to the shareholders.[16] The BOD term sheet states the procedure for altering the makeup

[15] General Statutes § 33-806 provides: "(a) A corporation's board of directors may amend or repeal the corporation's bylaws unless: (1) The certificate of incorporation or sections 33-600 to 33-998, inclusive, reserve this power exclusively to the shareholders in whole or part; or (2) the shareholders in amending or repealing a particular bylaw provide expressly that the board of directors may not amend or repeal that bylaw.

"(b) A corporation's shareholders may amend or repeal the corporation's bylaws even though the bylaws may also be amended or repealed by its board of directors."

[16] The certificate of incorporation and the bylaws were not a part of the appellate record. We are, therefore, unaware of the procedure to amend the bylaws. We have only the language of the BOD term sheet to guide us as to the procedure for naming seven directors and for removing or altering the makeup of the board of directors.

of the board, which, after two years, includes a recommendation by the board of directors and a vote of 67 percent of the shareholders. The board of directors did not have the authority during the time involved in the allegations of the plaintiff's complaint to deviate from the BOD term sheet. As such, the four to two vote of the board of directors could not negate the authority of George, Jr., to enforce these particular provisions of the Fairfax bylaws as stated in the June 21, 1999 resolution.[17]

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.

---

[17] Although we hold that George, Jr., had authority to bring the action on behalf of Fairfax, we do not decide who should represent Fairfax or whether the allegations of the complaint have merit. We decide only that jurisdiction existed, but express no opinion as to whether the individual defendants, in fact, violated the terms of the shareholder agreement.