[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the court concerning the defendant Jonathan Betts' claims for exemption from execution against certain bank accounts. On October 2, 2002, the plaintiff, the Commissioner of Labor, executed on the accounts in order to collect on a judgment rendered by the court (Allen, J.T.R.) on August 3, 1998.
The court held a hearing concerning the exemption claims on January 22, 2003, at which the parties appeared and presented evidence. Thereafter, pursuant to a briefing schedule, the parties each submitted briefs, dated February 24, 2003.
At the hearing, the parties agreed that there were two issues which required resolution by the court, (1) whether or not People's Bank account no. 76-500190-05 is a joint account in which Betts has an ownership interest; and (2) the applicability of General Statute §52-352b (r) to six other People's Bank accounts, as to which Betts has conceded ownership.[1]
 I.
"A bank is indebted to its account holders for the amount of the funds that they have deposited. Frigon v. Enfield Savings Loan Assn. ,195 Conn. 82, 87, 486 A.2d 630 (1985). Pursuant to § 36a-290 (a),[2]
`a bank is authorized to release up to the entire balance of a joint account to each and any coholder who so demands . . . [T]his authorization not only provides protection for payor banks but also recognizes a sufficient property interest in each coholder to warrant characterizing all such deposits as a debt due to each coholder . . .'Fleet Bank Connecticut, N.A. v. Carillo, 240 Conn. 343, 350, 691 A.2d 1068
(1997). Our Supreme Court has stated that `[a] signature card is essential to the creation of a bank account . . .' Frigon v. EnfieldSavings Loan Assn. , supra, 87." Grass v. Grass, 47 Conn. App. 657, CT Page 3312 660-61, 706 A.2d 1369 (1998).
"Whether a joint account has been established, however, depends solely on the deposit contract governing the account. See General Statutes §§ 36a-315 through 36a-323 (Deposit Account Contract Act)."Grass v. Grass, supra, 47 Conn. App. 661.
"[W]here there is definitive language, the determination of what the parties intended by their contractual commitments is a question of law . . ." (Internal quotation marks omitted.) Gateway Co. v. DiNoia,232 Conn. 223, 229, 654 A.2d 342 (1995). "It is the policy of the court to give effect to all wording in a document. When the plain meaning and intent of the language is clear, a clause . . . cannot be enlarged by construction. There is no room for construction where the terms of a writing are clear and unambiguous, and it is to be given effect according to its language." (Internal quotation marks omitted.) McAuley v.Southington Savings Bank, 69 Conn. App. 813, 821, 796 A.2d 1250, cert. denied, 261 Conn. 903, 802 A.2d 853 (2002).
"When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract . . . In addition, [t]he circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used . . . Finally, [t]he court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity." Grass v. Grass, supra,47 Conn. App. 662.
At the hearing, the plaintiff presented People's Bank's Universal Deposit Account Contract as Exhibit No. 4 (contract). Although effective in October 2000, after the subject account was opened,[3] both parties rely on the language of this contract as being applicable to the account. See plaintiff's memorandum of law, p. 5; Betts' post-hearing brief, pp. 2-3. In addition, at the hearing, Sharon Young, a senior fraud investigator at People's Bank, testified that the relevant language in the contract had not changed and was in effect in 1998 when the account was opened.
Under "II. General Rules For Deposit Accounts," section A, entitled "Opening Account; Signature Card," the contract provides, "To open an account, you must sign a `signature card.' Your signature (or mark) on the signature card, whether made on paper or made electronically, is your authorized signature, and by signing or making your mark, you agree to have your account and all related accounts governed by the terms and conditions of this Contract." See Plaintiff's Exhibit 4, p. 4. CT Page 3313
A joint account is described in the contract in section B. "This is an account in the names of two or more persons that is payable to any one of the persons or the survivor. Any person named as a joint owner on the signature card may withdraw the entire amount in the account." See Plaintiff's Exhibit 4, p. 5. The quoted language in the contract is clear and unambiguous.
The signature card for the account, provided in Defendant's Exhibit A, is likewise clear and unambiguous. It reflects that the account title was in the name of Betts' wife, Kathleen M. Canaiy Betts. Her signature appears twice thereon. Her name appears after "Name #1." The space after "Name #2" is blank. Betts' name does not appear on the signature card, either in printed form or by signature. A small yellow "post-it" type note also appears within this exhibit, which reads, "waiting for signature card with Husband's name on it. Added husband on 7-25-98. DL."[4] See Defendant's Exhibit A.
Since Betts' name does not appear on the signature card, he is not "named as a joint owner on the signature card" as required by the contract. From the evidence before the court it does not appear that a signature card with Betts' name on it was ever prepared. Under the circumstances, according to the contract, Betts has no right to any funds in the account, since he is not a "joint owner."
The plaintiff argues, in his memorandum, pp. 2-3, that another form signed by Betts' wife, Defendant's Exhibit B, shows that a joint account was created and that, according to General Statute § 36a-290 (b), it is prima facie evidence of an intention to vest title in both Betts and Mrs. Betts. This document, entitled CIF Maintenance/Change Form Request, states, under Special Instructions, "Add husband Jonathan D. Betts to statement savings account #076-0500190-05." The court finds that this document is not probative. As noted above, it is the deposit contract which governs. Here, the deposit contract requires that for a joint account to be created the joint owner's name must appear on the signature card. Defendant's Exhibit B, the change form request, is not the signature card.
Similarly unavailing are the plaintiff's reference to Ms. Young's testimony as to how the bank treated the account once Mrs. Betts signed the change form request and his reference to the "post-it" note. See plaintiff's memorandum of law, p. 3. As noted, the "circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used." Grass v. Grass, supra, CT Page 331447 Conn. App. 662. Likewise, the court declines to draw an adverse inference, as requested by the plaintiff, from the fact that Betts did not call his wife to testify at the hearing. See Plaintiff's memorandum of law, p. 9. As noted, testimony from her as to her intent would not be material here in view of the unambiguous contents of the contract and signature card.[5]
The plaintiff cites Alaimo v. First National Bank of Thompsonville,24 Conn. Sup. 369, 190 A.2d 924 (1963) as support for his position, asserting that Betts has an ownership interest in the account even if he was unaware of it. See plaintiff's memorandum of law, p. 7. Our Appellate Court addressed Alaimo in Grass v. Grass, supra. "The plaintiff relies onAlaimo . . . for the proposition that a signature card need not be signed to create a joint account with right of survivorship. The plaintiff's reliance is misplaced. In Alaimo, the court held that `where the intent of a deceased depositor to create a joint account and the bank's agreement to do so are sufficiently established, the survivor may take the balance, although there is no evidence he knew of the account.' Id., 373. In the present case, the clear language of the deposit account contract provided that the bank agreed to establish a joint account only as to `those persons who sign an authorization form.'" (Footnote omitted.) Grass v. Grass, supra, 47 Conn. App. 661-62.
Here, as set forth above, the contract provides that a joint account must contain a joint owner's name on the signature card. As noted, Betts' name does not appear on the signature card.
Accordingly, since Betts is not an owner of the account, the plaintiff may not execute upon it to collect upon the judgment against Betts. Betts' exemption claim as to account no. 76-500190-05 is sustained.
 II.
As to the other accounts, Betts claims the right to exemption of $1,000.00 pursuant to General Statutes §§ 52-367b[6] and 52-352b
(r).[7] Section 52-352b (r) "protect[s] the first $1,000.00 of the account not otherwise exempt." Ford Motor Credit Co. v. Christani, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. CV96 0054380S (Feb. 23, 1998, Flynn, J.). General Statutes §52-367b (f) provides that "[t]he claim of exemption filed by such debtor shall be prima facie evidence at [the] hearing of the existence of the exemption."
The plaintiff contends that the exemption does not apply, since Betts' liability stems from an obligation which was incurred in 1992, before the CT Page 3315 operative date of Public Act 93-301,[8] which added subsection (r) to § 52-352b. Public Act 93-301 provides that "this act shall take effect October 1, 1993, and shall be applicable to any lien for any obligation or claim arising on or after said date." According to the plaintiff, "since the Defendant's debt to the Plaintiff arose in 1992, prior to the October 1, 1993 effective date of the $1,000.00 exemption, the Defendant is not entitled to the $1,000.00 exemption provided by General Statutes Section 52-352b (r)." See plaintiff's memorandum of law, p. 10.
There is no question that Betts' obligation was found by the court (Allen, J.T.R.) to have arisen in 1992, before the operative date of § 52-352b (r). In affirming the trial court's judgment, our Appellate Court recited the facts which supported the judgment of the court. "Betts, the vice president and secretary of Venture, arrived at Specialty in September 1992, and began work toward the end of October 1992. The plaintiff commenced this action on behalf of the individual claimants in October 1993, seeking unpaid wages for the period of August 1992, through October 1992. The court awarded double damages and attorneys fees."Petronella v. Venture Partners, Ltd., 60 Conn. App. 205, 207, 758 A.2d 869
(2000), appeal dismissed, 258 Conn. 453, 782 A.2d 97 (2001). Further, our Appellate Court noted that the trial court found, referring to Betts, and another individual, that "[s]aid defendants . . . failed to pay back wages of the five claimants. Although they did not pay wages for August, September, and October, they continued to promise the claimants that those wages would be paid in order to induce them to keep working. They did pay them for work they did in November and December, but fired them in December without paying them for the back wages." Id., 211. In addition, the trial court's decision, at page 9, found "that interest should run from November 1, 1992 until all sums are paid."
Under these circumstances, Betts' obligation pre-dates the effective date of § 52-352b (r), October 1, 1993. Accordingly, the exemption provided therein is not available here. Betts' exemption claims as to the other accounts are overruled.
 CONCLUSION
For the foregoing reasons, Betts' exemption claims are (1) sustained as to account no. 76-500190-05; and (2) overruled as to the others accounts. It is so ordered.
 BY THE COURT ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT
CT Page 3316